296 P.2d 302

**J. C. GAUVEY, Plaintiff-Appellee,**

**v.**

**W. HAWKINS, Defendant-Appellant.**

**No. 6039.**

Supreme Court of New Mexico.

April 10, 1956.

Cornell & Clayburgh, Albuquerque, for appellant.

Neal & Girand, J. W. Neal, Hobbs, for appellee.

McGHEE, Justice.

The lower court rendered judgment for plaintiff upon action to recover the balance due, with interest and attorney's fees, on a promissory note executed by defendant for the purchase of certain second-hand trucks and equipment from plaintiff. From that judgment defendant prosecutes this appeal, arguing the trial court erred in refusing to find there was a breach of implied warranty of fitness for a specific purpose as to the trucks purchased and, further, that it was error for the trial court not to find that plaintiff had falsely represented the trucks and equipment were suitable for use in moving oil drilling equipment in mountainous country.

These arguments go to the evidence in support of the findings of fact made by the trial court. As we have so often said on appeals of this character, we will not go further than to determine whether the findings upon which judgment is based are supported by substantial evidence.

The controlling findings, if so supported, are that the promissory note was executed for a good and valuable consideration; that there was no false representation made by the plaintiff to the defendant to induce the defendant to execute the note; and that defendant failed to sustain the allegations of his answer. The answer pleaded false representation and perhaps set forth sufficient further allegations of fact to raise the issue of failure of consideration for breach of warranty.

The history of the controversy, stated in narrative fashion, and based upon the evidence most favorable to plaintiff-appellee, is set out in following paragraphs.

The defendant, a drilling contractor, entered into a contract with Skelly Oil Company to drill a well in southern Utah at a location 140 miles distant from the then location of his drilling rig at Dove Creek, Colorado, which he agreed to move to the

site. He did not have trucks with which to move the rig and on June 27, 1951, he entered into negotiations with the plaintiff, a trucking contractor, in Eunice, New Mexico, hoping initially to obtain the services of the plaintiff in transporting the rig. The plaintiff, however, did not have a permit from the Interstate Commerce Commission enabling him to go into Utah with his trucks and the transaction culminated with defendant purchasing from plaintiff two small auto trucks, a large tandem truck and three trailers, all second-hand, for an agreed price of $23,000, of which $12,000 was to be paid within sixty days and the balance on or before December 1, 1951, the defendant giving his promissory note therefor. The note provided for an additional ten percent liability for attorney fees if given to an attorney for collection and the plaintiff took back a chattel mortgage on the trucks and equipment sold as security for the note.

It is admitted that when the contract was entered into the defendant advised the plaintiff he would have to move his rig in rough, rugged mountain country and when the defendant asked whether the trucks would do the job in question the plaintiff said they would. The plaintiff testified the trucks were fully usable when sold and one of his witnesses testified that immediately preceding the time they were purchased by the defendant he had used the trucks in moving drilling equipment and had never had any trouble with them.

After the purchase defendant engaged truck drivers to take the trucks to Dove Creek, Colorado. While on the trip and shortly after leaving Vaughn, New Mexico, the tandem truck threw its drive shaft and universal joint and had to be pulled into Albuquerque, New Mexico, for repairs. The remaining trucks were driven on to Colorado as was the tandem truck after its repair.

All of the trucks had difficulty of one type or another, but defendant kept them and used them to haul part of his rig, stating, however, that they were never able to haul the entire rig and that he had to expend $3,000 in their repair.

The defendant returned to New Mexico after the rig had been moved and went to see the plaintiff asking for reimbursement for the repairs made, which the plaintiff refused, whereupon the defendant stated he was bringing the trucks back. Following this occurrence, and apparently about the middle of September, 1951, nearly two months after the contract of purchase had been made, the trucks arrived in Eunice and defendant again came to plaintiff's place of business, asking where the trucks should be taken. The plaintiff told the defendant not to put them in his (plaintiff's) yard, but to put them at "Watson's or any place you want to." At about the same time the trucks were returned the defendant deposited $9,000 in a bank for partial payment on his note.

The plaintiff testified that at the time of the return of the trucks he did not think the defendant made any complaint that the trucks were not in good condition at the time they were purchased, but that the defendant did state the trucks had been torn up in Utah.

One of plaintiff's witnesses, a truck salesman for a concern not involved in this litigation on whose grounds the trucks were apparently placed, testified he had examined the trucks after their return and that they were not in a usable condition. The truck cabs were badly shaken up and dented, the tires were bad and when the trucks were sought to be moved after standing on the lot a few days they could not be started. Plaintiff testified the tires had no rubber on them to speak of, that one truck had no axles, that another did not have a head on it and that they were completely torn up and not usable. He credited the condition the trucks were in to bad handling.

The trucks were later sold at public auction. Although other bidders were present, they made no offers for purchase and the plaintiff bid the trucks in for $3,000, with which sum defendant was credited on his note. Plaintiff still retains the trucks and they are not fit for any use without extensive repair.

There is ample evidence here that the trucks were in usable condition when the defendant bought them and were being used for the transport of drilling equipment. Whether they were in fact capable of successful operation in the rough terrain over which defendant was moving his rig was a disputed question with evidence being offered by plaintiff to the effect they were capable of it, but had been mishandled, and plaintiff testified defendant told him the trucks had been torn up while in Utah. The fact that defendant made the $9,000 payment on the note after full knowledge of all the claimed defects certainly indicates either he had waived them or they resulted from some intermediate condition for which he knew plaintiff was not responsible.

We think the lower court was justified in ruling this was not a case of false and fraudulent representation and its finding that none was made to induce the sale is supported by substantial evidence.

As already noted, defendant makes a point that this was a case of breach of implied warranty of fitness for a specific purpose. He points to certain of his requested findings of fact in an effort to show this was an issue in the case and relies upon the same testimony to show breach of warranty as has already been set out with regard to the issue of false representation.

Viewing the pleadings, testimony and requested findings liberally in favor of the defendant, the most that can be said is that the facts in dispute perhaps raised the legal question, but it is obvious from the record that defendant's case was really tried upon the theory of the defense of false represen-

tation. Even if defendant be permitted to avail himself of this theory on appeal, it is still of no benefit to him, for, as already demonstrated, the evidence of breach of warranty was controverted by plaintiff's testimony, the trial court heard the witnesses, viewed their demeanor and decided in favor of the plaintiff that the note in question was executed for a good and valuable consideration upon evidence we consider to be substantial. Its judgment should be affirmed and it is so ordered.

COMPTON, C. J., and LUJAN, SADLER and KIKER, JJ., concur.